OPINION OF THE COURT
John A. Milano, J.
This small claims action was instituted by the claimant "to recover monies arising out of the negligence of the defendant.” The facts, which are undisputed, are as follows. The claimant is a senior citizen who has been a patron of the defendant bank for almost 55 years. On June 29, 1989, the claimant entered the defendant bank, located at 216-19 Ja *264 maica Avenue, Queens, and proceeded to the teller’s window. At said window, the claimant withdrew $1,500 from her account in the form of cash, a $1,200 bank check and an $80 money order. At the same time the claimant also cashed a $17 Medicare check and a Dime Savings Bank check for over $200. The total cash given to claimant after all of these transactions amounted to $466. Claimant asked for and was given an envelope into which she placed all the cash and checks. She then put this envelope into her handbag, closed the bag, and placed it on her shoulder; the handbag hung from claimant’s shoulder by two straps which were attached to the bag. Claimant then walked from the teller’s window to a point approximately 30 feet from the teller window where a copying machine was located. This machine was located within the bank, in the same area as the teller windows. While in the process of making photocopies, the claimant testified that she noticed someone (a woman) in close proximity behind her. After finishing making her copies, the claimant opened her bag to put the copies away and discovered that the envelope containing the cash and checks was missing. Claimant thereupon went immediately to the defendant bank’s customer service representative and reported that she had been robbed.
The claimant contends that her money was stolen due to the defendant’s negligence. Although she did not demonstrate what constituted the defendant’s negligence, the claimant relies heavily on the recently decided case of Pincus v Citibank (NYU, June 8, 1989, at 27, col 4 [Civ Ct, Small Claims Part, Bronx County]). In that case, Judge McKeon, was confronted with the following set of facts. Plaintiff, a senior citizen, went to defendant bank and placed his money ($600) on the teller’s counter and was in the process of transacting his business when a man ran up to the counter, grabbed plaintiff’s money and fled from the bank. It was further elicited that although this branch was assigned a security guard at one time, Citibank, by way of policy determination, discontinued the use of security guards at that branch.
The court held (Pincus v Citibank, supra, at 27, col 5) "where a bank unilaterally eliminates an element of its security, reasonably relied upon by its customers, it should bear responsibility for a loss proximately resulting from its actions. In the view of this court, the crime perpetrated against Mr. Pincus was encouraged and made possible by the absence of security guards. * * * Judgment for plaintiff for $600.”
*265 In researching this matter this court has also become aware of the case of Stalzer v European Am. Bank (113 Misc 2d 77 [NY City Civ Ct]). In Stalzer, a matter also heard in Queens Civil Court, Small Claims Part, the facts were very similar to the case at bar. The claimant therein, Marian Stalzer, went to a . branch of defendant bank to cash her payroll check. After cashing the check at the teller’s window, the claimant then stepped away from said window and went to a nearby table, provided by the bank for its customers’ use, to count her money, when a man came from behind the claimant, and quickly snatched away her money. Claimant then let out a scream saying "I was robbed.” In a well-reasoned decision the court in Stalzer (at 84) held for the claimant stating "under the circumstances presented, where the probability of harm should reasonably have been foreseen, the added precautions suggested by the claimant, namely, the physical presence of a bank security guard, would have appreciably diminished the likelihood of an occurrence such as the one that victimized claimant” (emphasis added).
At first blush it would appear that based upon the findings in these two cases that the claimant herein should likewise be successful. However, there are important distinctions to be drawn between the above-cited cases and the one at bar.
There are two essential issues in all these cases, to wit, (1) what is the bank’s duty of care to its customers and (2) is the breach of that duty the proximate cause of the claimant’s loss? With respect to the first issue, one must first determine by which standard the bank’s action or inaction is to be measured, depending upon not only foreseeability (as a measure of liability), but also upon the factual situation.
First, there is the standard of care which a bank is required to exercise with respect to the handling of customer money and other typical banking transactions. "A banking corporation occupies a different relation to the public than do ordinary corporations, and its transactions frequently are subjected to a closer scrutiny and tested by a higher standard than that applied to ordinary commercial affairs.” (Rothschild v Manufacturers Trust Co., 279 NY 355, 359.) Although no precise line can be drawn, it is reasonable to conclude that where the bank is in receipt of the customer’s funds, the standard of care which a bank must employ to safeguard said funds is below that of an absolute insurer, but above the ordinary standard of reasonable care under the foreseeable *266 circumstances (see, Stalzer v European Am. Bank, supra, at 84).*
This is the standard against which the court in Pincus (NYU, June 8, 1989, at 27, col 4, supra) weighed the particular facts involved, since in that case the claimant had actually placed his money at the teller’s window just before the criminal act intervened. Thus, the defendant bank in Pincus was in, if not actual, at least constructive receipt of the claimant’s money. The defendant bank’s receipt of the claimant’s funds imposes upon it a higher duty of care with respect to safeguarding those funds than would be imposed upon it at a point in time prior to said receipt. Judged against this standard the court in Pincus concluded that the defendant bank’s elimination of the security guard was a breach of the bank’s proper standard of care, and that said breach was the proximate cause of the claimant’s loss.
In the case at bar, it is conceded that the claimant’s banking transaction had already been completed and that claimant was away from the teller’s window when an alleged criminal act intervened and claimant discovered the loss of her money. This was also the situation in Stalzer (113 Misc 2d 77, supra). Thus, in both Stalzer and in the case at bar, the standard of care to be measured is lower than that applied in Pincus (supra). Where a banking customer is "injured” on the bank’s premises, but not involved in an identifiable banking transaction, the duty owed is one of " 'reasonable care under the circumstances whereby foreseeability shall be a measure of liability’ ” (Stalzer v European Am. Bank, supra, at 83, citing Basso v Miller, 40 NY2d 233, 241). What constitutes reasonable care will depend upon the circumstances and "whether the foreseeability of the presence of an entrant on [the premises] is too remote, given the nature of the [attendant] risk and the burdens that would be imposed on [the bank] to [adequately] guard against it.” (Quinlan v Cecchini, 41 NY2d 686, 689.)
In Stalzer (supra) the claimant had shown (a) that the defendant bank therein had been robbed on prior occasions, (b) that the bank was in a vulnerable location being in the basement of a building providing easy access to the bank from the subway and (c) that the bank knew that Thursday, the day of claimant’s robbery, was a Gulf & Western pay day, when *267 unusually heavy cashing of checks occurred (the bank conceded that this branch was used almost exclusively by Gulf & Western employees). Under these circumstances, the Stalzer court concluded that the defendant bank had not acted with reasonable care with respect to its security measures and that the inadequate security was a proximate contributing cause of the claimant’s loss.
In contrast, in the case at bar, the alleged act was not an overt, and blatant criminal act but a secretive one (pickpocketing). The claimant has not shown that the defendant bank herein was in any way more prone to this kind of criminal act than any other bank, nor did she point to any fact or circumstance which could be construed to be a lack of inadequate security, other than the absence of a security guard. It is conceded, however, that there had been no security guard at this branch for the last 15 years, and the claimant did not show that the absence of this guard for that period in any way increased the foreseeability of "injury” versus the period when a guard was posted at the branch. Thus, the claimant asks this court to find that the defendant herein breached its duty of reasonable care on the mere fact that the bank has had no security guard for the last 15 years. Such a conclusion is not warranted. In order to sustain a finding of negligence against the defendant bank, the claimant would have had to come forward with some showing that the bank’s security precautions were inadequate based upon the particular facts and circumstances. This has not been done, and this court is unwilling to conclude that the mere absence of a security guard in a bank is equivalent to the lack of reasonable care on the bank’s part, especially where the harm to be prevented is the clandestine act of pickpocketing. Therefore, the claimant cannot prevail herein since she has failed to sustain her burden of proof with respect to proving negligence on the defendant’s part.
Since this court concludes that claimant has failed to show negligence herein, we do not reach the second issue of proximate cause. However, the court notes that even if claimant had sustained her burden of proof regarding the defendant’s breach of the duty of reasonable care, she has not shown that said breach was the proximate cause of her loss. Although the claimant believes she was pickpocketed, there is no proof of same. It is certainly possible, under the facts elicited, that claimant’s loss was the result of her own negligence rather than any intervening criminal act. The claimant’s testimony *268 is just as consistent with the conclusion that she dropped or otherwise misplaced the envelope as it is with the conclusion that she was pickpocketed. Certainly, the bank could not protect against the claimant’s own negligence, and even if claimant was indeed pickpocketed, the court cannot conclude that the absence of a security guard, per se, was the proximate cause of said pickpocketing. As noted, a pickpocket action, by its very nature, is one of stealth, and an agile pickpocket completes his crime without the victim even aware that anything has occurred. Indeed, claimant concedes that she did not feel or see anything unusual while she was at the copying machine. Thus, it is highly unlikely that the presence of a security guard, whose purview includes the entire banking floor, would have in any way prevented or even diminished the likelihood of the surreptitious action of an agile pickpocket.
For all the foregoing reasons, this court concludes that no culpability can attach to the defendant bank for claimant’s loss herein. Accordingly, judgment is for the defendant, without costs or disbursements.

 In certain respects and with regard to limited amounts, many banks do-insure against the loss of funds within the custody of the bank.